THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **MELISSA THACKER** | : | |
| 8811 Plainfield Road | : | |
| Cincinnati, OH 45236 | : | **Case No.: 1:21-cv-586** |
| **Plaintiff,** | : | |
| | : | **Judge** |
| v. | : | |
| | : | |
| **ABM INDUSTRIES, INC.** | : | |
| 354 Gest Street | : | |
| Cincinnati, OH 45203 | : | **Jury Demand Endorsed Hereon** |
| **Defendant.** | : | |

# COMPLAINT

Now comes Plaintiff Melissa Thacker, ("Plaintiff") by and through her undersigned counsel and proffers this Complaint for damages against Defendant ABM Industries, Inc., ("Defendant").

### PARTIES, JURISDICATION, VENUE

1. Plaintiff is a United States citizen and a resident of the State of Ohio.

2. Defendant is a foreign corporation which owns and operates the facilities in the Cincinnati, Ohio region.

3. At all times relevant hereto, Plaintiff was an "employee" as that term is defined under the applicable federal and state law, including but not necessarily limited 42 U.S.C. § 2000e and O.R.C. § 4112.01.

4. At all times relevant hereto, Defendant was an "employer" as that term is defined under applicable federal and state law, including but not necessarily limited to 42 U.S.C. § 2000e and O.R.C. § 4112.01.

5. This action is brought pursuant to the 42 U.S.C. § 2000e and O.R.C. 4112 *et seq.*

6. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, which provides for original jurisdiction of Plaintiff's claims arising under the law of the United States.

7. This Court has jurisdiction over Plaintiff's claims under the statutory law of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

8. This Court has jurisdiction over Plaintiff's claims under Title VII pursuant to 42 U.S.C. § 2000e-5 as Plaintiff has exhausted all administrative remedies and received the Right to Sue Letter that was dated June 15, 2021.

9. Venue is proper pursuant to 28 U.S.C. § 1391, because Plaintiff entered into an employment relationship with Defendant in the Southern District of Ohio and performed her job duties there, and Defendant is doing substantial business in the Southern District of Ohio.

## FACTUAL BACKGROUND

10. Plaintiff began working as an Account Manager for Defendant in approximately June 2008. In that position, Plaintiff's job duties consisted of working as an on-site manager at locations of Defendant's customers, helping direct and manage Defendant's employees servicing the specific customer.

11. Plaintiff earned a base salary of $55,016.00 at the time of her termination.

12. Plaintiff's first account while working for Defendant was at the First Financial building in downtown Cincinnati, Ohio. Plaintiff took over that account after the building's General Manager, Ralph Shine, demanded that Defendant remove Defendant's previous Account Manager, Jim Parrish.

13. Despite Mr. Shine's request to remove Mr. Parrish from the account, Defendant promoted Mr. Parrish to a District Manager soon after his removal. Plaintiff performed well on that account

after taking over for Mr. Parrish. Mr. Shine consistently provided Plaintiff positive feedback on her and her team's performance.

14. Mr. Shine left his General Manager role a few years after Plaintiff took over the account.

15. Soon after Mr. Shine left, Mr. Parrish began frequenting Plaintiff's account. During one of Mr. Parrish's visits, he said to Plaintiff, "the workplace is not for women," indicating that "women should be at home while men should be in the workforce trying to support the family."

16. Naturally, Plaintiff was highly offended by Mr. Parrish's comments given, among other reasons, she is a woman in the workforce.

17. Plaintiff reported Mr. Parrish's comments to Defendant's human resources a few months later. Defendant's human resources department conducted an investigation and, upon completing the investigation, Defendant moved Plaintiff to an account away from Mr. Parrish.

18. Defendant moved Plaintiff to an account at the Fourth & Vine building. Peter Birmingham was the building's General Manager.

19. Plaintiff performed well on that account for almost the following seven years. Mr. Birmingham provided her positive feedback during that time.

20. Defendant lost that account only because the owners of the building sold the building to new owners who are in the process of converting the building to residential condos. Plaintiff never saw Mr. Parrish at her account during that time.

21. In or around September 2019, Defendant requested that Plaintiff take over Defendant's Amazon account located in Wilmington, Ohio.

22. Defendant requested that Plaintiff take over the account because, according to Amazon employees, Amazon requested that Defendant remove the previous Account Manager, Ron

Barboza. Amazon requested Defendant to remove Mr. Barboza because he mismanaged the account.

23. Plaintiff understood Amazon's concerns because the account was a complete mess when she started. Some of the major problems at that time included: (1) Defendant's employees lacking TSA and AOA badges, including a number of employees who had started on the account when it opened in June 2019. The employees who lacked the badges had to be escorted by other people in order to go to certain parts of the account; (2) floor cleaning machines that did not work and no one knew how to repair them; (3) a total lack of cleaning supplies and equipment, requiring a number of the employees to use their own supplies; and, (4) no allocated budget to purchase supplies and no names of suppliers from which supplies could be ordered.

24. Immediately after Plaintiff started working on the account, she began addressing a number of the problems with the account. For instance, she began sending out emails to her District Manager, Robert Draper, and other members of Defendant's management inquiring about the supplies, budget, names of suppliers, and more. She also began working on getting the required badges for Defendant's employees and on fixing the floor machines.

25. Plaintiff made significant improvements on the account during the first several months she worked on it, receiving positive feedback from the Amazon employees. However, she could not make all the improvements she deemed necessary because Mr. Draper failed to provide the information she requested in her emails.

26. Oddly, Mr. Parrish began showing up on Plaintiff's Amazon account in December 2019. Plaintiff did not understand why Mr. Parrish began showing up on the account given that he was neither the District Manager nor Area Manager for the account.

27. Plaintiff's Area Manager was Greg Muennich.  Soon after Mr. Parrish began frequenting the account, Mr. Muennich attempted to provide a write-up to Plaintiff during a meeting.  Mr. Muennich claimed that the write-up was based upon information that he received from Mr. Parrish and Mr. Draper.  During the meeting, Mr. Muennich informed Plaintiff that the write-up was based upon "communication" issues she supposedly was having, though he failed to identify with whom.

28. Plaintiff pushed back on that suggestion, showing Mr. Muennich countless emails that she had sent to Mr. Draper requesting items and information she needed to better service the account.  Mr. Muennich decided not to issue Plaintiff the write-up upon seeing the evidence she presented regarding her attempts to communicate with other ABM employees.

29. After the meeting, Plaintiff sent Julie Klein, HR Business Partner, and Mr. Muennich an email stating that she felt as if she was "being harassed again by (upper) management," referencing back to her work at the First Financial building when Mr. Parrish made the sexually discriminatory comments toward her.  Plaintiff also explained, once again, why the proposed write-up was not supported by fact.

30. Mr. Parrish continued to show up on Plaintiff's account during the following several weeks.  Again, Plaintiff was confused about Mr. Parrish's continued visits to her account given that he lacked any responsibility over her account.

31. On the Wednesday prior to Plaintiff's termination, an Amazon employee, Bret l/n/u, asked for a meeting to discuss staffing issues on the account.

32. The meeting was attended by Mr. Draper, Plaintiff, Bret l/n/u, and Mr. Parrish.  During the meeting, Bret l/n/u informed Mr. Draper and Mr. Parrish that he wanted Plaintiff involved in all audits going forward.

33. Strangely, Mr. Parrish responded by saying that Plaintiff did not need to be part of the audits. Bret l/n/u pushed back, insisting that Plaintiff be present during the audits.

34. On or around January 31, 2020, Defendant blindsided Plaintiff when they told her they were terminating her employment. Defendant failed to provide Plaintiff any explanation for their decision, stating only that they were "eliminating her position."

35. On the day of Plaintiff's termination, one of her Team Leads, Brian Nichols, sent Plaintiff a text message advising her that Defendant was replacing her with the previous Account Manager, Mr. Barboza.

36. Mr. Nichols also sent Plaintiff a text message that day stating that, while they were cleaning out her office, "Robert [Draper] made comments about you having an office and it not looking good [and] he said for all they know you could have been having sex in there while on the clock." Mr. Nichols followed up his text message with an email to Plaintiff providing further details regarding Mr. Draper's comments while they cleaned out Plaintiff's office after Defendant terminated her employment.

37. In the email, Mr. Nichols states that Mr. Draper said while they were cleaning out her office, "she didn't need her office on the third floor that she was having sexual relations in her office with her employees and with our buildings employer and that's why everybody was so happy with her work."

## CAUSES OF ACTION

### COUNT I
### Sex Discrimination – Title VII and O.R.C. 4112 *et seq.*

38. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

39. At all times relevant hereto, Plaintiff, as a female, is a protected person under Title VII and O.R.C. 4112 *et seq.*

40. Plaintiff was qualified for her position based upon the fact that she was hired for her position and performed it well for several years with positive feedback from her employees.

41. Plaintiff suffered an adverse employment action when: (1) Mr. Muennich attempted to provide Plaintiff a write-up that was not supported by fact; (2) Plaintiff was terminated shortly after complaining of being harassed by upper management; (3) Plaintiff's position was replaced by the previous account manager, Mr. Barboza; and (4) Mr. Daper accused her of having sexual relations in her office with her employees.

42. Defendant treated Plaintiff less favorable than similar-situated male employees as Plaintiff endured sexually discriminatory comments about her, including accusations of her having sexual relations with Defendant's employees.

43. Upon Plaintiff's termination, Defendant replaced her position with a male.

44. Plaintiff will be able to establish that any allegedly legitimate reason for her termination was a pretext of discrimination.

## COUNT II
### Unlawful Retaliation – Title VII and O.R.C. 4112 *et seq.*

45. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

46. Plaintiff engaged in protected activity under Title VII and O.R.C. 4112 *et seq.*, by, among other things, sending an email to Ms. Klein and Mr. Muennich stating she felt she was being harassed by upper management again, referencing the previous situation in which she was discriminated

against by Mr. Parish, who made sexually discriminatory comments towards her. Plaintiff further explained that Mr. Muennich's proposed write-up was not supported by fact.

47. Defendant unlawfully retaliated against Plaintiff for engaging in such protected activity by, among other things, terminating her employment.

48. Plaintiff was qualified for her position based upon the fact that she was hired for her position and performed it well for several years with positive feedback from her employees.

49. Defendant's unlawful retaliatory conduct is causally related to Plaintiff's protected activity given, among other things, the short duration between Plaintiff's protected activities and her termination, and the fact that Defendant provided absolutely no legitimate basis for Plaintiff's termination.

50. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and is continuing to suffer from a loss of income and benefits and has experienced emotional distress and mental anxiety for which she should be compensated.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, and compensatory damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)
**GIBSON LAW, LLC**
9200 Montgomery Road, Suite 11A
Cincinnati, OH 45242
(brad@gibsonemploymentlaw.com)
[T]: (513) 834-8254
[F]: (513) 834-8253

*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)